```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

**BRADFORD W. DEEL,**

    Plaintiff/Counterclaim Defendant,

v.                                           Civil Action No. 2:06-1064

**WEST VIRGINIA EMS TECHNICAL**
**SUPPORT NETWORK, INC.,** a West
Virginia Corporation,
**JOE RICHARDS,** Chief Executive
Officer of WEST VIRGINIA EMS
TECHNICAL SUPPORT NETWORK, INC.,
**MARGARET COLLINS,** Program Administrator
for the Medley/Hartley Advocacy Program
of WEST VIRGINIA EMS TECHNICAL SUPPORT
NETWORK, INC., and
**NATIONAL UNION FIRE INSURANCE CO.**

    Defendants/Counterclaimant.

## MEMORANDUM OPINION AND ORDER

Pending is the motion of the plaintiff, Bradford W. Deel, filed on October 12, 2007, for a declaratory judgment that the insurance policy West Virginia EMS Technical Support Network ("WVEMS") had with National Union Fire Insurance Company of Pittsburgh ("National Union") covers the conduct alleged in this action. For the reasons that follow, the motion is denied.

I.

On December 22, 2006, Deel filed suit against WVEMS and its personnel, Joe Richards ("Richards") and Margaret Collins ("Collins"), alleging in his one-count complaint that they terminated his employment in June 2006 in violation of his rights under the Uniformed Services Employment and Re-employment Rights Act, 38 U.S.C. § 4301, et seq. ("USERRA").[1]  Deel seeks damages, interest, attorney fees and litigation expenses as set forth below.

According to the complaint, Deel began his employment with WVEMS on November 1, 2005 as the program attorney for the Medley/Hartley Advocacy program, which provides services to qualifying individuals with developmental disabilities.  (Compl. ¶ 10).  When his employment with WVEMS commenced, Deel was also a member of West Virginia Army National Guard.  (Id. ¶ 8).  In the early spring of 2006, Deel informed Collins, the program's administrator, that he had requested a transfer from the West Virginia Army National Guard to the United States Army Reserve so that he could become an instructor with the United States Army Command and General Staff College and for the purpose of being promoted from Major to Lieutenant Colonel.  (Id. ¶ 11).  Deel

---

[1] On February 28, 2007, WVEMS filed a counterclaim against Deel alleging two counts: Count I (Fraudulent Misrepresentation) and Count II (Abuse of Process).  (Countercl. ¶¶ 42-56).

**2**

allegedly told Collins that the new position would require him to complete training but did not specify the dates and times. (Id.). On May 10, 2006, Deel was transferred from the West Virginia Army National Guard to the United States Army Reserve. (Id. ¶ 12). On May 24, 2006, Deel notified Collins of some of the dates he would be required to attend military training to which Collins allegedly responded, "Jesus Christ; you'd better not ask for any vacation." (Id. ¶ 13). On May 30, 2006, Deel e-mailed Collins and Richards the dates he would be required to attend the training. (Id. ¶ 15). On June 1, 2006, Collins phoned Deel and advised him that his employment would be terminated, which it was on June 15, 2006. (Id. ¶¶ 17-18).

On January 1, 2005, National Union issued a comprehensive general liability ("CGL") insurance policy to the State of West Virginia that listed defendant WVEMS as an additional insured. (Policy, attached as Ex. A to Resp. to Mot. for Decl. Judg.). The policy was in effect from July 1, 2005 until July 1, 2006. (Id.).

Prior to July 3, 2007, National Union was not a party to this action. On June 15, 2007, Deel filed a motion to amend the complaint to assert a declaratory judgment action against National Union. On June 25, 2007, Deel and the original

3

defendants presented to the court a proposed order approving the amendment, which was entered on July 3, 2007.

## II.

In support of his contention that National Union is obligated to provide coverage for the claim in this action, Deel looks to the provision of the policy titled Coverage E, which in relevant part states:

> **COVERAGE E.   WRONGFUL ACT LIABILITY INSURANCE**
>
> 1.   Coverage -- Wrongful Act Liability Insurance
>
> It is agreed that:
>
> > A.   The Company will pay on behalf of the "insureds," individually or collectively, or their executors, administrators or assignees, in accordance with the terms of this coverage part, all sums which said "insureds" shall become legally obligated to pay as damages for a "loss" arising from any "Wrongful Act" of the "insured" or of any other person for whose actions the "insured" is legally responsible, and the Company shall have the right and duty to defend any suit against the "insured" seeking such damages, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

(Id.) (emphasis omitted).

The focus of the briefing is on the relevant policy exclusions.  Section 2 of Coverage E provides:

4

**2. EXCLUSIONS**

**This insurance does not apply to:**

**\* \* \* \***

    **H.    To any claim(s) made against the "insured" for damages attributable to wages, salaries and benefits.**

    **I.    To any claim(s) based upon or attributable to any allegations or claims that the "insured" breached the terms of any type or any form of contract, either express or implied, written or oral.**

(<u>Id.</u>) ("Exclusion 2") (emphasis omitted). Another pertinent exclusion is found in Endorsement 14, which states:

**EXCLUSION OF CLAIMS SEEKING NON-SPECIFIC OR GENERAL DEMANDS**

*This endorsement modifies insurance provided under the following:*

**WEST VIRGINIA COMPREHENSIVE LIABILITY COVERAGE FORM**

**Section I. - Coverages, Coverage A,B,C,D,& E,
2. Exclusions are amended to add:**

**No insurance coverage exists for any and all claims, demands or actions unless the specific demand for relief seeks compensatory or punitive damages (to the extent such punitive damages are allowed under existing law). Non-specific or general demands for judgment or relief, such as "for any other such relief as the court deems just and proper" and other similar types of demands, do not create a duty to either defend or pay under the terms and conditions of this policy.**

(<u>Id.</u>) ("Endorsement 14").

On April 4, 2007, Joseph Manoni of AIG Domestic Claims, Inc., sent a letter addressed to Joe Richards as CEO of WVEMS indicating his belief that the policy did not provide coverage for the damages sought. (04-04-07 Manoni Ltr. to Richards, attached as Ex. C to N.U. Resp. to Mot. for Decl. Judg.).

### III.

When the facts are undisputed, determination of insurance coverage is a question of law. Syl. pt. 1, <u>Tennant v. Smallwood</u>, 211 W. Va. 703, 704, 568 S.E.2d 10, 11 (2002). The language in the policy should be given its plain and ordinary meaning. Syl. pt. 7, <u>Moore v. CNA Ins. Co.</u>, 215 W. Va. 286, 599 S.E.2d 709 (2004) (internal citations omitted).

Inasmuch as the policy was written by the insurer, any ambiguity in it is to be "construed liberally in favor of the insured." <u>Jenkins v. State Farm Mut. Auto. Ins. Co.</u>, 219 W. Va. 190, 194, 632 S.E.2d 346, 350 (2006) (internal citations omitted). More specifically, exclusionary policy language "'will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated.'" <u>Id.</u> An insurance company has the burden of proving the facts necessary

for the application of an exclusion. Id. (internal quotations omitted).

IV.

The parties have stipulated that the damages being sought by the plaintiff in the underlying action consist of the following:

1. Payment for all lost wages and benefits Plaintiff has experienced as a result of his termination from employment;

2. Payment of statutory liquidated damages in an additional amount equal to Plaintiff's lost wages and benefits for a willful violation of the Uniformed Services Employment and Re-employment Rights Act;

3. Payment of reasonable attorneys fees, expert witness fees, and all other litigation expenses incurred by the Plaintiff;

4. Payment of prejudgment and post judgment interest.

(10-01-07 Damages Stip.).

Deel argues that damages of the kind set forth in the second and third paragraphs of the stipulation are not excluded and thus are covered by the policy. (Pls.' Memo. in Supp. of Mot. for Decl. Judg. at 8-9).

7

Inasmuch as Exclusion 2.H excludes claims made against WVEMS for damages attributable to wages, salaries, and benefits, the damages described in the first paragraph of the stipulation are not covered by the policy.

Exclusion 2.H also excludes the liquidated damages described in the second paragraph of the damages stipulation.[2] Deel's request for statutory liquidated damages is based on the provisions found in § 4323 of USERRA:

> (d) Remedies. -- (1) In any action under this section, the court may award relief as follows:
>
> * * * *
>
> (B) The court may require the employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter.
>
> (C) The court may require the employer to pay the

---

[2] National Union raises Exclusion 2.H generally as a bar to "compensatory damages." (N.U. Resp. to Mot. for Decl. Judg. at 5-6). As a result, Deel's arguments do not address the issue of the applicability of Exclusion 2.H to the second paragraph of the damages stipulation, but rather, primarily go to whether the liquidated damages constitute punitive damages such that they should not be excluded under Endorsement 14. Having found Exclusion 2.H prohibits coverage of the liquidated damages mentioned in the second paragraph of the damages stipulation, the court need not reach the difficult question of whether the request for liquidated damages constitutes a demand for punitive damages under the policy. If liquidated damages are not synonymous with punitive damages under the policy, the second paragraph of the damages stipulation would also be excluded by Endorsement 14.

>person <u>an amount equal to the amount referred to in subparagraph (B)</u> as liquidated damages, if the court determines that the employer's failure to comply with the provisions of this chapter was willful.

38 U.S.C. § 4323(d)(1)(B)-(C) (emphasis added). By confining relief under subsection (C) to the scope of that in subsection (B), the "liquidated damages" referred to are both measured by and "attributable to" the loss of wages or benefits the claimant allegedly suffered as a result of a wilful violation of USERRA. The only difference in (B) and (C) is the standard by which the claimant must prove the misconduct. If the discrimination were not willful, the employer is liable for the amount of the wages and benefits. See 38 U.S.C. §§ 4311, 4323(d)(1)(B). If the discrimination were willful, the employer could be liable for double that amount. Id. § 4323(d)(1)(C). In any event, both forms of recovery are dependent upon or "attributable to" the amount of the loss of wages or benefits suffered as a result of the violation of USERRA. Exclusion 2.H thus excludes coverage for the statutory liquidated damages sought by Deel.[3]

---

[3] **National Union further contends Exclusion 2.I excludes Deel's request for liquidated damages coverage. (N.U.'s Resp. to Mot. for Decl. Judg. at 5). As Deel points out, his claim is not based on a breach of contract but, rather, the termination of his employment in violation of USERRA. (Pl.'s Reply to Resp. to Mot. for Decl. Judg. at 3). Consequently, Exclusion 2.I is inapplicable.**

9

Deel also argues in his initial memorandum, but not in his reply, that the attorney fees referred to in the third paragraph of the damages stipulation are not excluded. (Pls.' Memo. in Supp. of Mot. for Decl. Judg. at 8-9). National Union's response is that attorney fees are ancillary to any recovery on the substantive claims. (N.U. Resp. to Mot. for Decl. Judg. at 5 n. 2). The argument goes that because the policy does not cover the substantive claims set forth in paragraphs one and two of the stipulation, neither does it cover the ancillary request for attorney fees. (Id.)

In addition to being ancillary to Deel's substantive claims, attorney fees are conceptually distinct from the requests for damages set forth in paragraphs one and two of the stipulation. Attorney fees and litigation expenses, if awarded under USERRA, are not classifiable as compensatory or punitive damages; rather, they fall more nearly within the category of general demands for relief and as such are excluded from coverage by Endorsement 14. See, e.g., Saunders v. Branch Banking and Trust Co. of VA, 526 F.3d 142, 149 (4th Cir. 2008) (treating compensatory damages, punitive damages, and attorney fees as separate types of damages in discussion of potential damages in Fair Credit Reporting Act case). Moreover, because the request

for attorney fees is not a request for compensatory or punitive damages, it is excluded from coverage by the same endorsement. See, e.g., Porter v. U.S. Agency for Intern. Development, 293 F. Supp.2d 152, 157 (D. D.C. 2003) (attorney fees in Title VII context are not part of compensatory damages).

Deel does not argue that the fourth paragraph regarding interest provides a basis for coverage.  When one recovers a monetary award, interest is awarded in order to compensate for the loss of use of the money.  See Kaiser Aluminum & Chem Corp. v. Bonjorno, 494 U.S. 827, 835-36 (1990); Gordon v. Matthew Bender & Co., 186 F.3d 183, 186 (2d Cir. 1999).  Of course, if damages are not awarded, interest is not recoverable.  Interest is therefore inextricably intertwined with the award of damages itself.  Because the damages set forth in paragraphs one and two of the stipulation are excluded from coverage, interest thereon is likewise excluded.

Of the four paragraphs in the damages stipulation, Exclusion 2.H excludes the first, second and fourth paragraphs and Endorsement 14 excludes the third paragraph.

11

**V.**

**It is, accordingly, ORDERED that the motion for declaratory judgment be, and it hereby is, denied.**

**The Clerk is directed to forward copies of this memorandum opinion and order to all counsel of record.**

DATED: July 23, 2009

John T. Copenhaver, Jr.
United States District Judge